MARIAN E. CHILD & another *vs.* MARIE C. CLARK & another.
SAME *vs.* CHARLOTTE E. WASHINGTON & others.

Bristol.   March 27, 1918. — June 26, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Probate Court*, Revocation of decree.  *Fraud.*

One who, a year after the death, intestate, of the owner of certain land, received a
conveyance of a part of it from the heirs, eighteen years later, after the heirs
had sold all the remaining land to other persons and had no interest therein re-
maining, by consent of such heirs procured the appointment of an administrator
of the estate of the intestate and a decree of the Probate Court allowing a petition
by the administrator under R. L. c. 146, § 18, as amended by St. 1907, c. 236,
(St. 1917, c. 296, not then having been enacted,) for leave to sell the whole of the
land for purposes of distribution to a person named by him for a price greatly
below its value, he and his attorney in procuring the allowance of such decree
intentionally refraining from informing the court of the sales by the heirs or of
the state of the title or of his part in or his purpose with relation to the pro-
ceedings, which was to strengthen his title to certain land which he contended
was included in that conveyed to him, the better to maintain a writ of entry
begun by him against one of the other grantees of the heirs, and "to use the
balance of the land as a club to force" a recognition of his claim.  *Held*, that
such conduct was a fraud upon the court, and, upon a petition of successors in
title to grantees from the heirs of different portions of the land, filed eight
months after the entry of the decree, the Probate Court properly might revoke
such decree.

The standing of such successors in title to grantees from the heirs of portions of
the land affected by the decree for sale as petitioners for the revocation of the
decree thus procured by a fraud on the court is not dependent upon any statutory
provision and cannot seriously be questioned.  *Giles* v. *Kenney*, 221 Mass. 262,
distinguished.

APPEALS from a decree of the Probate Court for the county
of Bristol revoking a decree dated October 13, 1916, authorizing
the administrator of the estate of Frances E. Curtis, late of New
Bedford, to sell certain land at Edgartown for the purposes of
distribution.   The petition for revocation was filed June 15,
1917.

The appeal came on to be heard by *Braley*, J., upon the pleadings
and an agreed statement of facts and by him was reserved for
determination by the full court.

The material facts agreed upon are described in the opinion. R. L. c. 146, § 18, as amended by St. 1907, c. 236, was as follows:

"Section 18. The Probate Court may, upon the petition of an administrator, administrator with the will annexed, or executor unless the will otherwise provides, with the consent of all parties interested or after notice, license him to sell the whole or any part of the real property or any undivided interest therein belonging to the estate of the deceased in such manner and upon such notice as the court orders, for the purpose of distribution; and the net proceeds of such sale, after deducting the expenses thereof and such amount as may be required for the payment of debts and legacies in consequence of a deficiency in the personal property, shall, after two years from the time of the filing of the administrator's or executor's bond, be distributed to the persons who would have been entitled to said real property and in the proportions to which they would have been entitled had it not been sold."

This statute, after the decree, the revocation of which is the subject of these appeals, was further amended by St. 1917, c. 296, to read as follows:

"SECTION 18. The Probate Court may, upon petition of an administrator, administrator with the will annexed, or executor, unless the will otherwise provides, filed within one year after the date of the giving of the executor's or administrator's bond, or if an administrator *de bonis non* shall be appointed within one year after the date of the original appointment of the executor or administrator, then within six months after the date of the giving of a bond by such administrator *de bonis non*, with the consent of all parties interested or after notice, license him to sell the whole or any part of the real property or any undivided interest therein belonging to the estate of the deceased, in such manner and upon such notice as the court orders, for the purpose of distribution; and the net proceeds of such sale, after deducting the expenses thereof and such amount as may be required for the payment of debts, legacies and charges of administration, in consequence of a deficiency in the personal property, shall, subject to the laws governing the distribution of the personal estate of the deceased, be distributed to the persons who would have been entitled to such property and in the proportions to which they would have been entitled had it not been sold. Before any such license shall be

issued, the petitioner shall file in the Probate Court an affidavit containing the names of all persons known to him as having or claiming any interest in said real estate derived from any deed of conveyance or mortgage by, through or under any of the heirs or devisees, and if it appears that there are any such persons, they shall be notified in accordance with the order of the court, and shall be made parties to the proceedings."

*J. G. Palfrey,* for the petitioners.

*A. E. Seagrave,* for the respondents.

DE COURCY, J.  These are two probate appeals from a decree of the Probate Court, revoking, on the grounds of fraud, a decree dated October 13, 1916, authorizing the administrator of the estate of one Frances E. Curtis to sell certain real estate for the purpose of distribution.

Mrs. Curtis died in 1897, intestate.  Her sole heirs were Charlotte E. Nugent (now Charlotte E. Washington) and Love P. Chamberlain; and her only property was the parcel of real estate in question, situated on Chappaquiddick Island, Edgartown.  These two heirs in 1898 by warranty deed conveyed a portion of the premises to the predecessor in title of the petitioners Marian E. Child and Edith H. Bass, (herein referred to as the petitioners,) and another portion to the respondent Charles S. Simpson.  In 1901 they conveyed all their remaining right, title and interest in the premises described in said decree, to one Harrison H. Child, whose title is now vested in part in the petitioner Edith H. Bass, and in part in the petitioner Marian E. Child.

Recently the present respondent Simpson brought a writ of entry in the Land Court against the present petitioner Edith H. Bass to determine the boundary between their respective portions of the premises in question.  In order "to strengthen his title to the land claimed by him in that litigation and to use the balance of the land as a club to force the petitioners to recognize the justice of his said claim," Simpson engineered the following scheme: he secured administration on the estate of Frances E. Curtis by means of the consent of the two heirs, Charlotte E. Nugent and Love P. Chamberlain, who had sold out the only assets of the estate eighteen years before; he procured a decree for the sale of the premises for the purpose of distribution, and a conveyance thereof to one Marie C. Clark, who held her title as his mere nominee and sub-

ject to his direction; and he caused the property to be appraised and sold for $75, — a figure greatly below the value thereof — $40 of it being paid to said heirs for their participation in the scheme. Simpson controlled the entire proceedings in the Probate Court; intentionally refrained from giving any notice, formal or otherwise, to the petitioners whom he was depriving of the legal title to their land, and intentionally refrained from informing the Probate Court as to the state of 'the title, or his part and purpose with relation to the proceedings.

It would be a reproach to our law if such an injustice to the rights of the petitioners could be perpetrated by means of a fraud practised upon the Probate Court (as that court has found), and no redress be afforded. That the Probate Court has a broad power to revoke or correct its decrees on the ground of fraud practised upon the parties or upon the court is too well established to require discussion. *Tucker* v. *Fisk*, 154 Mass. 574. *Harris* v. *Starkey*, 176 Mass. 445. *Phillips* v. *Chase*, 203 Mass. 556. *Sampson* v. *Sampson*, 223 Mass. 451, 462. *Raymond* v. *Cooke*, 226 Mass. 326. *McKay* v. *Kean*, 167 Mass. 524. And the record discloses ample justification for the exercise of that power.

The right of these petitioners to bring to the attention of the Probate Court the fraudulent scheme by which its decree had been procured as an instrument of oppression, cannot be seriously questioned. No one had more interest in the effect of the decree than those whose property it purported to take without a hearing. Presumably the court could take action on these facts, regardless of how they were called to its attention, and so prevent Simpson from profiting by his own wrong. See *Stevens* v. *Palmer*, 15 Gray, 505, 506; *Langley* v. *Conlan*, 212 Mass. 135. And a petition for revocation of the decree and license dated October 13, 1916, was a suitable procedure to adopt.

The case of *Giles* v. *Kenney*, 221 Mass. 262, relied on by the respondents, affords them no support. The narrow question of statutory construction there decided was, that a mortgagee to whom the heirs had mortgaged the real estate of a deceased person before the appointment of an administrator, was not one of the "parties interested" within the meaning of R. L. c. 146, § 18, as amended, and entitled to notice of a subsequent petition for sale for the purpose of distribution, and to appeal from the decree.

See now St. 1917, c. 296. The complaint against the decree in the present case is not that the respondents failed to comply with the formal requirements of the statute, but that they used that procedure as a sham and pretence to secure the instrumentality of the Probate Court in carrying out a fraudulent scheme.

The decree of the Probate Court revoking the decree of October 13, 1916, is affirmed with costs.

*So ordered.*